UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARIA PORTER, | |
| Plaintiff, | CIVIL ACTION |
| | No. 1:11-cv-03536-SCJ |
| v. | |
| STERLING ONLINE PROCESSING SERVICES, LLC, | |
| Defendant. | |

### ORDER

This matter is before the Court following a non-jury trial held on April 14, 2014. At trial, the Court heard opening statements, sworn testimony presented by the respective parties, received evidence, and otherwise heard argument. Having weighed and considered all the evidence presented, the Court makes the following findings of fact and conclusions of law.

**I.   FINDINGS OF FACT**

Sterling Online Processing Services, LLC ("Defendant") is a company engaged in the buying and selling of currency from various countries. Plaintiff Maria Porter ("Plaintiff") began working as a consultant for Defendant in October of 2010. Plaintiff became a full-time employee of Defendant in January 2011, working as an

Order Processing Fulfillment Manager. During her full-time employment with Defendant, Plaintiff's hourly rate of compensation was $37.50.

On June 21, 2011, Plaintiff informed Frank Bell ("Mr. Bell"), Defendant's Chief Operating Officer, that she believed she was paid her regularly hourly rate for certain hours of overtime in April 2011. Mr. Bell subsequently requested that Plaintiff provide him with all the overtime hours for which she had not been properly compensated. After a review of her records, Plaintiff informed Mr. Bell that the full extent of her unpaid overtime was 34.75 hours worked in April 2011.

Defendant subsequently presented Plaintiff with a check in the amount of $4,685.00 and a release agreement (the "Release") for resolution of overtime payments owed to Plaintiff. In addition, the Release specifies that, by agreeing to its terms and accepting the $4,685.00, Plaintiff releases Defendant, as well as its parent, subsidiary and affiliated entities, from any future or present claims "under any federal, state or local laws" [Doc. No. 48-2, 3]. Plaintiff signed the Release and accepted the $4,685.00.

Plaintiff initiated this action against Defendant on October 18, 2011, seeking overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

201 *et seq.* for all overtime she worked for Defendant from October 1, 2010 to August 5, 2011.

## II. <u>CONCLUSIONS OF LAW</u>

### A. Issue of Liability

In the Eleventh Circuit, there are only two ways to settle a claim for overtime wages under the FLSA: 1. The Secretary of Labor can supervise a pre-suit payment agreement of unpaid wages owed to an employee; or 2. "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). At trial, Defendant acknowledged that the Release violates the FLSA's required pre-suit review process by the Secretary of Labor and, therefore, cannot serve as a settlement of Plaintiff's claim for overtime compensation under the FLSA. Defendant further acknowledged at trial that the $4,685.00, if offered in full for Plaintiff's execution of the Release, could not serve as payment for the overtime owed to Plaintiff. Instead, Defendant argued at trial that only $2,000.00 of the $4,685.00 offered to Plaintiff was intended as payment for Plaintiff's execution of the Release. Defendant further argued at trial that the remaining $2,685.00 of the

$4,685.00 offered to Plaintiff was payment for Plaintiff's overtime and had no connection to the Release. In comparison, Plaintiff testified at trial that she believed the $4,685.00 was offered to her as a bonus payment.

Under Georgia law, contract construction is generally an issue of law to be decided by the Court. *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30, 743 S.E.2d 381, 389 (2013).[1] Further, when a contract's language is clear and unambiguous, said contract must be enforced by its terms. *City of Baldwin*, 293 Ga. at 30, 743 S.E.2d at 389. Here, the Release states that its purpose is to "settle amicably [Plaintiff's] claim for overtime pay" as well as "any claims arising from or relating in any way to her employment relationship or the termination of her employment" [Doc. No. 48-2, 3]. The Release further states that Defendant will "pay the amount of $4,685.00" to Plaintiff "[i]n full consideration of [Plaintiff's] execution of th[e] Release" [*id.*]. This language states, without ambiguity, that Plaintiff was paid $4,685.00 for the full execution of the Release. Based on this clear and unambiguous language, the Court must find as a matter of law that the $4,685.00, in its entirety, was paid to Plaintiff for her execution of the Release.

---

[1] The Release states that its terms will be interpreted under Georgia law [Doc. No. 48-2, 5].

The Court acknowledges that it has previously determined the Release does not constitute an effective settlement agreement of Plaintiff's claim for overtime compensation under the FLSA [Doc. No. 32, 8-9]. However, as the Release also attempts to settle any potential claim Plaintiff may have against Defendant under state law, such a determination does not render the entirety of the Release null and void. Under Georgia law, if a "contract is severable . . . the part of the contract which is legal will not be invalidated by the part of the contract which is illegal." O.C.G.A. § 13-8-1; *see also* O.C.G.A. § 13-1-8(a) ("A contract may be either entire or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder."). Whether a contract is severable "is determined by the intention of the parties." O.C.G.A. § 13-1-8(b). Here, the Release has a severability provision, which states as follows:

> In case any one or more of the provisions contained in th[e] Release shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of th[e] Release, which shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

[Doc. No. 48-2, 5]. Therefore, while it does not serve as a settlement of Plaintiff's overtime claim under the FLSA, the Release is not invalid or otherwise void.

In summary, the Release still serves as a valid agreement between Plaintiff and Defendant to the extent it attempts to settle all claims Plaintiff may have against Defendant under state law. Therefore, the Court must construe and enforce the Release by its unambiguous terms. The Release states that Plaintiff is offered "[i]n full consideration of [Plaintiff's] execution of th[e] Release . . . the amount of $4,685.00" [*id.* at 3]. Therefore, the Court determines that Plaintiff was offered $4,685.00, in its entirety, as consideration for Plaintiff's execution of the Release. As the entire amount of the $4,685.00 was offered for Plaintiff's execution of the Release, no smaller portion of this amount can be construed as a separate payment of the overtime pay owed to Plaintiff. Accordingly, as no overtime payment has been made, the Court determines that Defendant is liable for overtime compensation owed to Plaintiff under the FLSA.

### B.     Issue of Damages

The parties stipulate that Plaintiff worked 34.75 hours of overtime in April 2011, for which she was paid her regular hourly rate. The parties further stipulate that Plaintiff's regular rate of pay was $37.50 per hour and her overtime rate was $56.25.[2] Based on these amounts, Plaintiff should have been compensated in the

---

[2] The FLSA provides that an employee is entitled to overtime compensation in an amount at least one and one-half times his or her regular compensation rate for each hour worked

amount of $1,954.69 for 34.75 of overtime work in April 2011. Instead, Plaintiff was paid $1303.13 for these hours. Therefore, by subtracting the amount she was owed from the amount she was actually paid, Plaintiff is entitled to $651.56 in overtime pay for 34.75 hours of overtime in April 2011.

At trial, Plaintiff argued that she is also owed overtime pay for 4 hours of overtime worked during the week of March 7 through March 13 of 2011 and for 8.5 hours of overtime worked during the week of March 21 through March 27 of 2011. During this time period, Plaintiff acknowledges that she was employed by Sterling Currency Group, LLC ("Sterling Currency"), not the Defendant. However, Plaintiff asserts that Defendant is still liable for these 12.5 hours of overtime because Defendant is in fact the alter ego of Sterling Currency.

The Georgia Supreme Court has described the applicability of the alter ego doctrine as follows:

> To establish the alter ego doctrine a plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or by confusing otherwise separate properties, records or control, or by showing that a disregard of the corporate entity made it a mere instrumentality for the transaction of the other entity's own affairs and that there is such unity

---

in excess of forty in a given week. 29 U.S.C. § 207(a)(1). Therefore, Plaintiff's overtime rate was $56.25 ($37.50 multiplied by 1.5).

>of interest and ownership that the separate personalities of the corporations no longer exist. The evidence must be such that to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

*NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 397, 478 S.E.2d 769, 775 (1996) (internal quotations, alterations, and citations omitted). In comparison, federal law allows piercing of the corporate veil under an alter ego theory when: "(1) there is such unity of interest, and lack of respect given to the separate identity of the corporation by its shareholders, that the personalities and assets of the corporation and the individuals are indistinct, and (2) adherence to the corporate form would sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *N.L.R.B v. W. Dixie Enters., Inc.*, 190 F.3d 1191, 1194 (11th Cir. 1999) (citation omitted). At trial, neither party addressed whether this Court should apply state law or federal law to Plaintiff's alter ego theory of liability. However, the Court does not need to make such a determination as Plaintiff fails to satisfy either standard. *See Mama's Enters., LLC v. United States*, 883 F. Supp. 2d 1128, 1134 (N.D. Ala. 2012) (stating some courts have found the resolution of whether state law or federal law applies to an alter ego theory is unnecessary when both theories are essentially the same).

In an attempt to establish Defendant is the alter ego of Sterling Currency, Plaintiff only articulates that she thought she was working for Defendant during

-8-

March of 2011. That belief is based in part on the fact that her work location, her boss, and her business activities did not change after her employment transition from Sterling Currency to Defendant. However, such evidence does not establish that Defendant is the alter ego of Sterling Currency. Specifically, Plaintiff's own subjective belief, based on nothing more than her own working conditions, does not establish that Defendant and Sterling Currency are in essence the same legal entity. More to the point, Plaintiff does not establish that the Court would effectively promote a fraud by recognizing Defendant and Sterling Currency as separate legal entities. Therefore, as she was an employee of Sterling Currency rather than Defendant, Plaintiff is not entitled to recover from Defendant the 12.5 hours of alleged overtime worked in March 2011.

In summary, Plaintiff worked 34.75 hours of overtime while employed by Defendant. As explained *supra*, Plaintiff is entitled to $651.56 for these overtime hours. In addition, Plaintiff is entitled to an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b). Accordingly, the Court hereby awards Plaintiff overtime damages in the amount of **$651.56** and liquidated damages in the amount of **$651.56**.

The Court further recognizes that, in the event a judgment is rendered in favor of an employee seeking overtime compensation, it must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Accordingly, Plaintiff is hereby **DIRECTED** to file any motion for attorney's fees and court costs within **30 days** from the date of this order.

### III.   CONCLUSION

For the above stated reasons, the Clerk is hereby **DIRECTED** to enter final judgment in this action against Defendant and in favor of Plaintiff in the amount of **$651.56** in overtime damages and **$651.56** in liquidated damages.

Pursuant to 28 U.S.C. § 216(b), Plaintiff is hereby **DIRECTED** to file any motion for attorney's fees and court costs within **30 days** from the date of this order.

**IT IS SO ORDERED,** this 14th day of May, 2014.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE